Curran, Dennis J., J.
Procedural Background
This matter came before me on the plaintiff Quin-tiles, Inc.’s request for a temporary restraining order seeking to restrain and enjoin the defendant Pep-timmune, Inc. from transferring any asset valued at more than $500, a hearing on which was held this afternoon.
Factual Background
The present dispute between Quintiles, Inc., and Peptimmune, Inc., North Carolina and Delaware corporations respectively, arises out of the latter’s alleged breach of a Master Services Agreement signed by the parties on June 9,2009. That Agreement provided that if a dispute arose between the parties: “Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association (’AAA’) under its commercial Arbitration Rules ...” See Master Services Agreement, paragraph 29.0, page 13. (Emphasis added.)
DISCUSSION
In an effort at revisionist history, the plaintiff Quin-tiles, Inc. now claims that “any” does not mean any, but instead, an exception should be carved out of the clear language of this Agreement to permit judicial injunctive relief. There are at least four reasons for rejecting such a strained interpretation.
First, and most obviously, this is a commercial contract, sixteen pages and single-spaced. It contains provisions for “Confidentiality” (section 6.0), “Independent Contractor Relationship” (section 9.0), “Regulatory Compliance" (section 10.0), “Conflict of Agreements” (section 13.0), “Limitation of Liability” (section 15.0), “Indemnification” (section 17.0), “Relationship with Affiliates” (section 19.0) “[ ] Disclosure of Hazards” (section 20.0), Force Majeure (section 21.0), “Notices [ ]” (section 22.0), “Choice of Law, Waiver, and Enforceability” (section 28.0) and “Survival” (section 28). It is difficult to believe that the details of such a significant contract between two parties in different regions of the country was not analyzed and reviewed by legal counsel before its signature. Notably, plaintiffs counsel did not deny this observation during oral argument. Thus, the inference is inescapable: the language of this contract was likely well vetted before execution.
Second, the language of the contract between the parties states that “any” controversy or claim arising out of or relating to this Agreement shall be settled by arbitration. The contract did not say “most,” “many,” “some” or “none”: it said “all.” Despite plaintiffs counsel bald assertion that “any” did not really mean “any,” it is clear that the parties chose and agreed upon that particular word.[1] There is nothing unclear or ambiguous here.
Third, the integration clause in Section 30.0 removes any presently manufactured doubt about the clear import of the word “any”. That section states that “(t]his Agreement. . . contains the entire understandings of the parties with respect to the subject matter herein . ..” Thus, no resort to extra-contractual interpretation is permitted.
Fourth, the Commercial Arbitration Rules (effective June 1, 2009) empower an arbitrator to “. . . take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property . . .” (See R-34(a)). Indeed, the Rule further states: “(T]he arbitrator may require security for the costs of such measures.” (See R. 34(b).) (Emphasis added.)
Thus, Quintiles, Inc.’s plaint that it cannot obtain security for its claim does not comport with the arbitration rules. That Rule 34(c) permits a request for an interim measure from a judicial authority neither mandates such consideration nor is warranted here, given the facts of this case.
Accordingly, the plaintiffs chosen forum for dispute resolution — bargained for and expressly stated — is arbitration, not judicial. To conclude otherwise dishonors the intentions of these commercial entities, memorialized in their arms-length and quite detailed contract.
ORDER
For these reasons, the plaintiffs prayer for a temporary restraining order in its Complaint is DENIED.

 Contrast Alice’s Adventures in Wonderland by Charles Lutwidge Dodgson (pseudonym, Lewis Canroll) (Appleton Publishing House: New York, New York) (1865):
Humpty Dumpty: When I use a word, it means just what I choose it to mean — neither more nor less.
*458 Alice: The question is, whether you can make words mean so many different things.
Humpiy Dumpty: The question is: which is to be master— that’s all.